**07 CV**

**4443**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTON PARTNERS, on behalf of itself and all others similarly situated, | CASE NO. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| XINHUA FINANCE MEDIA LIMITED, FREDY BUSH and SHELLY SINGHAL, | |
| Defendants. | MAY 3 0 2007 |

Plaintiff, individually and on behalf of all other persons and entities similarly situated,

by its undersigned counsel, makes the following allegations, which are based upon the

investigation conducted by counsel, which included, among other things, a review of the public

announcements made by defendants, Securities and Exchange Commission ("SEC") filings,

press releases, analyst reports and media reports regarding Xinhua Finance Media Limited

("Xinhua" or the "Company").

### I.    NATURE OF THE CLAIMS

1.    This is a securities class action brought under Sections 11, 12 and 15 of the

Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k, 77l and 77o, and Sections

10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b),

and 78t(a), and the rules and regulations promulgated thereunder by the SEC, including Rule

10b-5, 17 C.F.R. §240.10b-5.

2.    Plaintiff's Securities Act claims are contained in Section III of this complaint.

Plaintiff's Exchange Act claims are contained in Section IV. The Securities Act claims

contained in Section III expressly do not incorporate any of the allegations contained in

Section IV, including the allegations of scienter and fraud. Plaintiff's claims are brought on

behalf of all persons who purchased the publicly traded ADSs of Xinhua between March 9,

2007 through May 21, 2007 (the "Class Period").

## II.    JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act (15 U.S.C. §77v(a)) and Section 27 of the Exchange Act (15 U.S.C. §78aa) as well as 28 U.S.C. §§1331, 1337 and 1367.

4.      The claims asserted arise under Sections 11, 12 and 15 of the Securities Act (15 U.S.C. §§77k, 77l and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

5.      Venue is proper in this District pursuant to Section 22(a) of the Securities Act (15 U.S.C. §77v) and 27 of the Exchange Act (15 U.S.C. §78aa) and Section 27 of the Exchange Act (15 U,S.C. §78aa) and 28 U.S.C. §1391(b) and (c).  Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District.

6.      In connection with the facts and omissions alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III. CLAIMS AGAINST DEFENDANTS UNDER SECTIONS 11, 12, AND 15 OF THE SECURITIES ACT

7.      These claims are brought against the Company and its executives and directors who signed the Registration Statement and Prospectus in connection with Xinhua's March 9, 2007 initial public offering of 23,076,923 American Depository Shares ("ADSs") at $13.00 per share.

## A.    SECURITIES ACT PLAINTIFF

8.      Plaintiff Alton Partners purchased Xinhua ADSs traceable to Xinhua's initial public offering as detailed in the attached certification and was damaged thereby.

## B.    SECURITIES ACT DEFENDANTS

9.      Defendant Xinhua was incorporated on November 7, 2005 in the Cayman Islands.  The Company purports to be a leading diversified media company in China and claims to have assembled and built a group of media assets and strategic partnerships that will

2

enable the Company achieve best in class media and advertising services across various sectors of the media business in China.

10.    Defendant Fredy Bush ("Bush") was Xinhua's Chief Executive Officer during the Class Period.

11.    Defendant Shelly Singhal ("Singhal") was Xinhua's Chief Financial Officer during the Class Period.

12.    Defendants named in ¶¶9-11, together, are referred to herein as the "Securities Act Defendants" and the Defendants named in ¶¶10-11 are referred to herein as the "Individual Defendants".

## C.    OVERVIEW OF SECURITIES ACT CLAIM

13.    On March 9, 2007 Xinhua issued 23,076,923 ADSs at $13.00 per share in an initial public offering that raised approximately $300 million.

14.    On May 21, 2007, *Barron's* reported that Xinhua's Registration Statement omitted to state that at the time of the initial public offering, Defendant Singhal, in addition to being Xinhua's CFO, was an investment banker and stock broker who runs the Newport Beach, Calif., firm Bedrock Securities, and that since April 2006, Defendant Singhal's firm has been under a cease-and-desist order from the National Association of Securities Dealers for violating several SEC rules.

15.    On May 21, 2007 Xinhua shares declined from a closing price of $9.94 per share on May 18, 2007 to close at $8.76 per share on May 21, 2007, a decline of $1.18 per share or approximately 12%, on heavier than usual volume.

16.    On May 24, 2007, Xinhua shares closed at $6.71 per share.

17.    The Section 11 claim is brought on behalf of persons who purchased Xinhua ADSs pursuant and/or traceable to the March 9, 2007 initial public offering through May 21, 2007. This claim alleges that the Registration Statement and Prospectus filed with the SEC in

3

connection with the initial public offering contained untrue statements and omitted material facts required to be stated in order to make the statements not misleading.

18.    These claims allege only that the Registration Statement and Prospectus contained untrue statements and omitted material facts.  There is no allegation with respect to Counts I, II, or III that any of the Securities Act Defendants acted with scienter.

## D.    XINHUA'S REGISTRATION STATEMENT

19.    The initial public offering was pursuant to the filing by Xinhua of the following: 1) a Registration Statement filed with the SEC on Form F-1/A on March 5, 2007; and 2) a Prospectus filed with the SEC on Form 424(b)(1) on March 9, 2007 (collectively the "Registration Statement").

20.    The Registration Statement was signed by Defendants Bush and Singhal.

21.    The Registration Statement contained the following statements:

> *Shelly Singhal* has served as our Chief Financial Officer since September 2006, and has served as a director of our parent, Xinhua Finance Limited, since July 2004. Mr. Singhal will serve as our director, commencing from the Securities and Exchange Commission's declaration of effectiveness of our registration statement on Form F-1, of which this prospectus is a part. Mr. Singhal sits on the Compensation Committee, Audit Committee and Investment Committee of our parent. Mr. Singhal founded the SBI Group, an investment company, in June 2001, serving as its Managing Director until December 2003, and as Chairman and CEO since that time. Mr. Singhal has also served as a director and member of the Compensation Committee of Small World Kids Inc. since October 2004.  Mr. Singhal owns Bedrock Securities, a NASD licensed broker dealer and its sister company, Bedrock China Futures, Ltd., which is an Asian securities trading company. Mr. Singhal worked for SBI-E2 Capital, a member of Softbank Investment Group, from 2001 to 2003. Mr. Singhal holds a B.S. degree in Business Administration from Seaver College at Pepperdine University.

22.    The statements identified in ¶21 were untrue and omitted material facts required to be stated in order to make the statements not misleading because they failed to disclose that at the time of the initial public offering, Defendant Singhal, in addition to being Xinhua's CFO, was an investment banker and stock broker who runs the Newport Beach, Calif., firm

4

Bedrock Securities, and that between April 2006 and December 2006, Defendant Singhal's firm had been under a cease-and-desist order from the National Association of Securities Dealers ("NASD") for allegedly violating several SEC rules and that at the time of the initial public offering the NASD inquiry was pending.

## COUNT I

### (Against All Defendants for Violations of Section 11 of the Securities Act)

23.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, except that, for purposes of this claim, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct.

24.     The Individual Defendants signed the Registration Statement that contained untrue statements of material facts and omitted material facts required to be stated in order to make the statements contained therein not misleading.  As such, defendants are liable to plaintiff and the class.

25.     Plaintiff purchased Xinhua ADSs in traceable to the initial public offering.

26.     Plaintiff did not know, and in the exercise of reasonable diligence, could not have known of the untrue statements and omissions in the Registration Statement.

27.     Plaintiff has sustained damages as a result of the untrue statements and omissions in the Registration Statement, for which it is entitled to compensation.

28.     Plaintiff filed within one year after the discovery of the untrue statements and omissions, and/or within two years after the discovery of facts constituting the violation. Plaintiff also has brought this action within five years after initial public offering.

29.     Plaintiff and other class members were damaged by the defendants untrue statements and omissions in the aforementioned Registration Statement.

30.     The defendants utilized national securities exchanges, the mails, telephones and other instruments of interstate commerce in the offering and sale of Xinhua ADSs.

31.     By reason of the foregoing, the defendants have violated Section 11 of the Securities Act.

## COUNT II

### (Against All Defendants For Violations of Section 12 of The Securities Act)

32.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein, except that, for purposes of this claim, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct.

33.    By means of a Prospectus and by using the means and instruments of interstate commerce and of the mails, defendants offered and sold Xinhua ADSs to plaintiff and members of the Class.  As previously set forth herein, the Prospectus included untrue statements of material facts and omitted to state material facts required to be stated in order to make the statements not misleading.

34.    Plaintiff and members of the Class, who purchased the Xinhua ADSs, did so based upon the Prospectus.

35.    Plaintiff and members of the Class did not know of the untrue statements and omissions described above when they purchased Xinhua ADSs.

36.    Plaintiff filed suit within one year after the discovery of the untrue statements and omissions or after such discovery should have been made by the exercise of reasonable diligence and within five years after sale of Xinhua's initial public offering.

37.    By virtue of the foregoing, the defendants violated Section 12 of the 1933 Act.

## COUNT III

### (Against the Individual Defendants of Section 15 Of The Securities Act)

38.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein except that, for purposes of this claim, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct.

39.    The Individual Defendants, at all relevant times, participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Xinhua's business affairs.

40.     As officers and directors of a publicly owned company, these defendants had a duty to disseminate accurate and truthful information with respect to Xinhua's financial condition and results of operations.

41.     Because of their positions of control and authority as senior officers and directors of Xinhua, these defendants were able to, and did, control the contents of the Registration Statement which contained materially false financial information.  These defendants therefore were "controlling persons" of Xinhua the meaning of Section 15 of the Securities Act.

## IV.  CLAIMS AGAINST ALL DEFENDANTS UNDER SECTIONS 10(b) AND RULE 10(b)-5 AND THE INDIVIDUAL DEFENDANTS UNDER SECTION 20(a) OF THE EXCHANGE ACT

42.     The remaining counts of this Complaint are brought under Section 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder on behalf of all persons and entities, who purchased Xinhua ADSs during the Class Period to recover damages resulting from a fraud perpetrated by defendants during the Class Period.  The defendants are Xinhua, Bush and Singhal (collectively the "Exchange Act Defendants" or "defendants".).

43.     On March 9, 2007, Xinhua completed its initial public offering.

44.     On May 19, 2007, Xinhua disclosed that Defendant Singhal "resigned".

45.     On May 21, 2007, *Barron's* reported the following concerning Xinhua in an article titled *Ignoring an Inconvenient Truth*:

> Asian business media tapped Fredy Bush as the "entrepreneur of the year" last October for building her Xinhua Finance into a Chinese media and financial information powerhouse.  In just seven years, Xinhua has become a kind of McGraw-Hill of China - - with financial news services, stock indexes and ratings agencies. Listed in Tokyo, Bush's company's raised $300 million in March in a U.S. offering on behalf of its Xinhua Finance Media unit (ticker: XFML). Xinhua Finance has collected some influential U.S. assets this year, including the hard-hitting proxy advisory firm Glass Lewis that's staffed with veterans of the Securities and Exchange Commission and the Wall Street Journal . . . or at least it was until last week.

That's when two of the most prestigious staffers at Glass Lewis resigned after apparently concluding that their new parent company, Xinhua Finance, would have flunked a Glass Lewis review of its corporate transparency. It turns out that Xinhua Finance Media's IPO prospectus failed to mention some awkward facts about the company's then-chief financial officer, Shelly Singhal.

The 39-year-old Singhal was simultaneously the company's CFO and an investment banker and stock broker who runs the Newport Beach, Calif., firm Bedrock Securities. And since April 2006, Singhal's firm has been under a cease- and-desist order from the National Association of Securities Dealers, as the regulators seek to suspend Bedrock for violating several SEC rules. I called Bedrock, but no one returned my message.

Singhal's name actually came up in Barron's May 7 issue ("New Controversy for iMergent"), where we reported that he was fighting a private civil racketeering suit in California courts for his investment activities. He got involved with Xinhua Finance as a major investor in 2003. He had previously been a major investor in a couple of companies called AremisSoft and ACLN -- which turned out to be outrageous frauds.

By coincidence, perhaps, our mention of Singhal on May 7 was followed Tuesday by a Xinhua Finance Media announcement that Singhal was moving from his role as chief financial officer of the U.S.-listed unit to become head of corporate development for the Cayman Island-based parent company's capital markets activities. Taking his place as CFO was David Wang, who had worked for Singhal's brokerage firm and investment bank.

Friday, Glass Lewis' head of research, Lynn E. Turner, resigned. Before joining Glass Lewis, Turner had been arguably the best accounting regulator to serve at the Securities and Exchange Commission. Wednesday, Glass Lewis' managing director and research editor, Jonathan Weil, resigned. He had come to the proxy advisory firm from the Wall Street Journal, where he was the first reporter to blow the whistle on Enron.

"I am uncomfortable with and deeply disturbed," Weil said in his resignation letter, "by the conduct, background and activities of our new parent company Xinhua Finance Ltd., its senior management, and its directors. To protect my reputation, I no longer can be associated with Glass Lewis or Xinhua Finance."

Shortly after I called Xinhua Finance Friday afternoon to ask about Singhal, the company put out a press release announcing that he

8

was resigning from the boards of both Xinhua Finance and its
Nasdaq-listed subsidiary, and also leaving his management
positions. "It is a difficult decision to leave these two Companies
that I have helped to grow," he said in the announcement, "but
there are other priorities that will require my full attention, so it is
clearly the right thing to do now."

A few moments later, I was on the phone with Xinhua Finance
CEO Freddy Bush. She praised Singhal's skills at dealing with
regulatory regimes in the U.S., Japan and China. "Shelly's got
some very unique skills," she said.

I asked if she'd known about the NASD action against Singhal's
brokerage firm when putting together a prospectus for Xinhua
Finance Media that omitted that fact. After a long speech about
how she had relied on the best advice of the company's
underwriters and lawyers, she acknowledged that, "yes," she had
known about the NASD problems of Singhal's brokerage firm. Her
legal advisers told her, she said, that the prospectus didn't have to
make that disclosure . . . .

46.     On May 21, 2007 Xinhua shares declined from a closing price of $9.94 per share

on May 18, 2007, to close at $8.76 per share on May 21, 2007, a decline of $1.18 per share or

approximately 12%, on heavier than usual volume.

A.     **THE PARTIES**

47.     Paragraph 8 is incorporated herein by reference for Plaintiff.

48.     Paragraph 12 is incorporated herein by reference for the Individual Defendants.

49.     As senior executive officers and/or directors of Xinhua, the Individual

Defendants had a duty to disseminate accurate and truthful information regarding the

Company's financial statements and to correct any previously issued statements that had

become untrue so that the market price of Xinhua's ADSs would be based upon truthful and

accurate information.

50.     The Individual Defendants, by reason of their executive or directorial positions

with Xinhua, were controlling persons of the Company and had the power and influence, and

exercised the same, to cause the Company to engage in the conduct complained of herein. The

Individual Defendants controlled the contents of the Company's SEC filings, corporate reports

9

and press releases. Each of the Individual Defendants participated in writing or reviewing
Xinhua's corporate reports, press releases, and SEC filings alleged to be misleading and thus
had the ability and opportunity to prevent their issuance or cause them to be corrected.

51.     Because of their positions and access to material non-public information
available to them, these defendants knew that the adverse facts specified herein had not been
disclosed to and were being concealed from the public and that the positive representations
which were being made were then materially false and misleading. Thus, each of the
Individual Defendants is legally responsible for the falsification of Xinhua's public reports,
financial statements, and press releases detailed.

**B.     Xinhua's False and Misleading Statements**

52.     The initial public offering was pursuant to the filing by Xinhua of the
following: 1) a Registration Statement filed with the SEC on Form F-1/A on March 5, 2007;
and 2) a Prospectus filed with the SEC on Form 424(b)(1) on March 9, 2007 (collectively the
"Registration Statement").

53.     The Registration Statement was signed by Defendants Bush and Singhal.

54.     The Registration Statement contained the following statements:

> *Shelly Singhal* has served as our Chief Financial Officer since
> September 2006, and has served as a director of our parent, Xinhua
> Finance Limited, since July 2004. Mr. Singhal will serve as our
> director, commencing from the Securities and Exchange
> Commission's declaration of effectiveness of our registration
> statement on Form F-1, of which this prospectus is a part.
> Mr. Singhal sits on the Compensation Committee, Audit
> Committee and Investment Committee of our parent. Mr. Singhal
> founded the SBI Group, an investment company, in June 2001,
> serving as its Managing Director until December 2003, and as
> Chairman and CEO since that time. Mr. Singhal has also served as
> a director and member of the Compensation Committee of Small
> World Kids Inc. since October 2004.  Mr. Singhal owns Bedrock
> Securities, a NASD licensed broker dealer and its sister company,
> Bedrock China Futures, Ltd., which is an Asian securities trading
> company. Mr. Singhal worked for SBI-E2 Capital, a member of
> Softbank Investment Group, from 2001 to 2003. Mr. Singhal holds
> a B.S. degree in Business Administration from Seaver College at
> Pepperdine University.

55.    On May 15, 2007, Xinhua issued a press release that disclosed Singhal was

replaced as CFO.  The press release stated, in part, the following:

**Xinhua Finance Media Announces Management Changes,
Strengthened Executive Team and Streamlined Structure**

Beijing, May 15, 2007 — Xinhua Finance Media Limited
("XFMedia") (NASDAQ:XFML), today announced the promotion
of several executives in connection with the creation of a shared
services group designed to consolidate and simplify certain
operational and reporting structures between XFMedia and its
parent company, Xinhua Finance Limited (TSE: 9399) (OTC
ADRs: XHFNY) "XFL" . . . .

Given his in-depth knowledge of both XFL and XFMedia, Shelly
Singhal has been appointed Executive Director, Corporate
Development, and will serve as a part of the shared services group
with responsibility for capital markets activities, transactions, and
mergers and acquisitions.

Andrew Chang has been appointed Chief Financial Officer of
XFMedia. Andrew joined the finance department of XFL in 2003.
He played a key role working closely with Shelly Singhal in the
development of the XFMedia business as Managing Director of
Finance.

56.    The foregoing statements in ¶¶54-55, were materially false and misleading because

they failed to disclose that Defendant Singhal, in addition to being Xinhua's CFO, was an

investment banker and stock broker who runs the Newport Beach, Calif., firm Bedrock Securities,

and that between April 2006 and December 2006, Defendant Singhal's firm had been under a

cease-and-desist order from the National Association of Securities Dealers ("NASD") for

allegedly violating several SEC rules and that the NASD inquiry was pending.

C.    **The Truth is Revealed**

57.    On May 21, 2007, *Barron's* published the article set forth above in ¶45.

58.    On May 21, 2007 Xinhua shares declined from a closing price of $9.94 per share on May 18, 2007 to close at $8.76 per share on May 21, 2007, a decline of $1.18 per share or approximately 12%, on heavier than usual volume.

D.    **Loss Causation/Economic Loss**

59.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Xinhua's ADS price and operated as a fraud or deceit on Class Period purchasers of Xinhua ADS by misrepresenting the true facts about Company's CFO.  Defendants achieved this by making positive statements about Xinhua's CFO, as detailed herein. Later, however, when defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Xinhua ADSs fell precipitously as the prior artificial inflation came out of Xinhua's ADS price.  As a result of their purchases of Xinhua ADSs during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

60.    As a direct result of defendants' admissions and the public revelations regarding the truth about Xinhua's CFO, the price of ADSs materially declined, removing the inflation from Xinhua's ADS price, causing real economic loss to investors who purchased the ADSs during the Class Period.

61.    The decline in Xinhua's ADS price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Xinhua's ADS price declines negate any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions,

macroeconomic or industry factors, or Company-specific facts unrelated to the defendants'
fraudulent conduct.

**E.      Fraud-On-The-Market Doctrine**

62.     At all relevant times, the market for Xinhua ADSs was an efficient market for the
following reasons, among others:

      a.  The Company's ADSs met the requirements for public listing and was
           listed and actively traded on the NASDAQ, a highly efficient market;

      b.  As a regulated issuer, the Company filed periodic public reports with
           the SEC; and

      c.  The Company regularly issued press releases which were carried by
           national news wires.  Each of these releases was publicly available and
           entered the public marketplace.

63.     As a result, the market for the Company's ADSs promptly digested current
information with respect to Xinhua from all publicly available sources and reflected such
information in the price of the Company's ADSs.  Under these circumstances, all purchasers of
the Company's publicly traded ADSs during the Class Period suffered similar injury through their
purchase of the publicly traded ADSs of Xinhua at artificially inflated prices and a presumption of
reliance applies.

**F.      Additional Scienter Allegations Applicable Only to Count IV**

64.     As alleged herein, defendants acted with scienter in that defendants knew that the
public documents and statements issues or disseminated in the name of the Company were
materially false and misleading; knew that such statements or documents would be issued or
disseminated to the investing public; and knowingly and substantially participated or acquiesced
in the issuance or dissemination of such statements or documents as primary violations of the

13

federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Xinhua, their control over, and/or receipt and/or modification of Xinhua's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Xinhua, participated in the fraudulent scheme alleged herein.

65.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

66.     Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein for the following reasons: (a) the Individual Defendants were the most senior officers of Xinhua, issued statements and press releases on behalf of Xinhua and had the opportunity to commit the fraud alleged herein. As illustrated by the Individual Defendants' positions with the Company, they had and used their influence and control to further the scheme alleged herein. The Individual Defendants had broad responsibilities that included communicating with the financial markets and providing the markets with financial results. The Individual Defendants were privy to and directed the making of financial projections and results. By making the misleading statements contained herein, the Individual Defendants knew that they would artificially inflate the value of the Company's ADSs. Defendants' actions in doing so resulted in damage to plaintiff and the Class.

## G.    NO SAFE HARBOR

67.     The statutory safe harbor providing for forward-looking statements under certain circumstances does not apply to the allegedly false statements pleaded herein. The allegations

concern misrepresentations of historical facts and are not forward-looking. Further, even if the statements pleaded were forward-looking, they were not identified as a "forward-looking statement" when made. Nor did meaningful cautionary statements identifying important factors that could cause actual results to differ materially from that in the forward-looking statement accompany such statement. To the extent that the statutory safe harbor does apply to any statement pleaded, the Defendants are liable for those false forward-looking statements because at the time each of those statements was made the speaker actually knew the statement was false and the statement was authorized and/or approved by an executive officer of Xinhua who actually knew that those statements were false when made.

**COUNT IV**
**AGAINST ALL DEFENDANTS FOR VIOLATION OF SECTION 10(b)**
**OF THE 1934 ACT AND RULE 10b-5**

68.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

69.    This Count is asserted against all defendants and is based upon Section 10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission.

70.    During the Class Period, defendants, directly or indirectly, engaged in a common plan, scheme, and unlawful course of conduct and conspiracy, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon plaintiff and the other members of the Class, and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to plaintiff and the other members of the Class. The purpose and effect of said scheme, plan, conspiracy, and unlawful course of conduct was to induce plaintiff and the other

15

members of the Class to purchase Xinhua ADSs during the Class Period at artificially inflated prices.

71.    During the Class Period, defendants, pursuant to said scheme, plan, conspiracy, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, participated in the preparation and issuance of deceptive and materially false and misleading statements to the investing public which were contained in or omitted from various documents and other statements, as particularized above.

72.    Defendants each knew and intended to deceive plaintiff and the other members of the Class, or in the alternative, acted with reckless disregard for the truth when they failed to disclose or cause the disclosure of the true facts to plaintiff and the other members of the Class.

73.    As a result of the dissemination of the false and misleading statements set forth above, the market price of Xinhua ADSs was artificially inflated during the Class Period. In ignorance of the false and misleading nature of the representations described above and the deceptive and manipulative devices and contrivances employed by said defendants, plaintiff and the other members of the Class relied to their detriment on the integrity of the market price of the stock in purchasing Xinhua ADSs. Had plaintiff and the other members of the Class known of the materially adverse information misrepresented or not disclosed by defendants, they would not have purchased Xinhua ADSs at the artificially inflated prices that they did.

74.    As a result of the inflation of the price of Xinhua ADSs during the Class Period caused by defendants' material misrepresentations and omissions, plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs alleged.

75.    By reason of the foregoing, defendants, directly or indirectly, violated the 1934 Act and Rule 10b-5 promulgated thereunder in that they:

        a.    employed devices, schemes, and artifices to defraud;

b. made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c. engaged in acts, practices, and a course of business which operated as a fraud and deceit and a scheme to defraud upon plaintiff and the other members of the Class in connection with their purchases of Xinhua ADSs during the Class Period.

**COUNT V**
**AGAINST THE INDIVIDUAL DEFENDANTS FOR**
**LIABILITY PURSUANT TO SECTION 20(a) OF THE 1934 ACT**

76.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if set forth fully herein.

77.    The Individual Defendants, by virtue of their offices and specific acts described above, were, at the time of the wrongs alleged herein, controlling persons of Xinhua within the meaning of Section 20(a) of the 1934 Act.

78.    The Individual Defendants had the power and influence and exercised the same to cause Xinhua to engage in the illegal conduct and practices complained of herein.

79.    By reason of the conduct alleged in Count IV of the Complaint, the Individual Defendants are liable for the aforesaid wrongful conduct, and are liable to plaintiff and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Xinhua ADSs during the Class Period.

**H.    CLASS ACTION ALLEGATIONS**

80.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons who purchased the publicly traded ADSs of Xinhua purchased between March 9, 2007 through May 21, 2007 (the "Class").

17

81.     The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to plaintiff at the present

time and can only be ascertained through appropriate discovery, plaintiff believes that there are

hundreds of members of the Class located throughout the United States. Xinhua issued

23,076,923 ADSs in the initial public offering, which were actively traded on the NASDAQ in an

efficient market.

82.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff

and all members of the Class have sustained damages because of defendants' unlawful activities

alleged herein. Plaintiff has retained counsel competent and experienced in class and securities

litigation and intends to pursue this action vigorously. The interests of the Class will be fairly and

adequately protected by plaintiff. Plaintiff has no interests that are contrary to or in conflict with

those of the Class that plaintiff seeks to represent.

83.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action.

84.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts and

omissions as alleged herein;

(b)     whether defendants misstated and/or omitted to state material facts in their public

statements and filings with the SEC;

(c)     whether defendants participated directly or indirectly in the course of conduct

complained of herein; and

18

(d)    whether the members of the Class have sustained damages and the proper measure of such damages.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the members of the Class, prays for judgment as follows:

a.  declaring this action to be a proper class action and certifying plaintiff as the representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

b.  awarding compensatory damages in favor of plaintiff and the other members of the Class against all defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of defendants, together with interest thereon;

c.  awarding plaintiff and the other members of the Class punitive damages against all defendants, jointly and severally, on the common law claim for fraud and deceit;

d.  awarding plaintiff and the Class their costs and expenses incurred in this action, including reasonable allowance of fees for plaintiff's attorneys, accountants, and experts, and reimbursement of plaintiff's expenses; and

e.  granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: May 25, 2007

                                        KAPLAN FOX & KILSHEIMER LLP

                                        By: _____

                                        Robert N. Kaplan (RK-3100)
                                        Frederic S. Fox (FF-9102)
                                        Linda P. Nussbaum (LN-9336)
                                        Jeffrey P. Campisi (JC-7264)
                                        805 Third Avenue, 22nd Floor
                                        New York, NY  10022
                                        Telephone: (212) 687-1980
                                        Facsimile: (212) 687-7114

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, TODD KATZ, as Vice President of ALTON PARTNERS, hereby certify and swear as follows:

1.    I have reviewed a Complaint against Xinhua Finance Media Limited alleging violations of the securities laws and hereby authorize the filing of the Complaint on my behalf;

2.    I am willing to serve as a representative party on behalf of a class, or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary;

3.    I have not within the 3-year period preceding the date hereof sought to serve, or served, as a representative party on behalf of a class in an action brought under the federal securities laws, unless noted hereafter:

The following is a description of my transactions during the Class Period specified in the Complaint in the ADSs of Xinhua Finance Media Limited:

| Security | Transaction | Trade Date | Price Per Share |
|---|---|---|---|
| Xinhua Finance Media | Purchase 400 shares | March 9, 2007 | $13.00 |

I did not purchase shares of Xinhua Finance Media Limited at the direction of my counsel or in order to participate in any private action under the federal securities laws;

I will not accept any payment for serving as a representative party on behalf of a class beyond my prorata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  5/25/            , 2007

_____
TODD KATZ, VICE PRESIDENT
ALTON PARTNERS